IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KELVIS AVILA,**

    **Petitioner,**

    v.                               **CASE NOS. 2:06-cv-263; 2:06-cv-577**
                                       **CRIM. NO. 2:04-cr-156**
                                       **JUDGE FROST**
**UNITED STATES OF AMERICA,**         **MAGISTRATE JUDGE ABEL**

    **Respondent.**

**ORDER and**
**REPORT AND RECOMMENDATION**

On April 12, 2006, petitioner Kelvis Avila, a federal prisoner, filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255, a petition for a writ of habeas corpus under 28 U.S.C. §2241, and motion to reduce sentence under 18 U.S.C. §3582. Doc. No. 30. Thereafter, on July 10, 2006, petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. Doc. No. 32. Because petitioner filed his second §2255 petition prior to disposition of his initial habeas corpus petition, petitioner's second §2255 petition may be construed as a motion to amend the petition with new claims. *See Ching v. United States*, 298 F.3d 174, 177 (2nd Cir. 2002). The claims pleaded in the second petition do not appear to be barred by the statute of limitations. *See Mayle v. Felix*, 545 U.S. 644 (2005). Accordingly, petitioner's request to amend the petition to include additional claims therefore hereby is **GRANTED**, and these cases are consolidated for consideration.

**I. SUMMARY**

In this consolidated habeas corpus petition, petitioner asserts that his sentence of sixty months

incarceration pursuant to his negotiated guilty plea should be reduced because he is not an American citizen and is subject to deportation, and because he is ineligible for drug treatment while incarcerated and unable to serve any of his sentence in a halfway house. Petitioner complains that he is subject to more restrictive prison facilities due to his alien status. Petitioner also asserts that he was denied the effective assistance of counsel because his attorney failed to seek a downward departure from his recommended sentence under the United States Sentencing Guidelines, and failed to fight against his deportation. Finally, petitioner appears to assert that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), and that his guilty plea was not knowing, intelligent, or voluntary due to misrepresentations of counsel. For the reasons that follow, the Magistrate Judge concludes that all of the foregoing claims are without merit or not properly before this Court and therefore **RECOMMENDS** that this action be **DISMISSED.**

## I. PROCEDURAL HISTORY

This consolidated action involves petitioner's underlying criminal conviction pursuant to the terms of his negotiated guilty plea on conspiracy to distribute and possess with intent to distribute over 100 grams of heroin, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B)(i). *See* Doc. Nos. 20, 21. On July 12, 2005, petitioner was sentenced to sixty months incarceration plus four years supervised release. Doc. No. 26. Petitioner did not file an appeal.

On April 12, 2006, he filed the instant habeas corpus petition under 28 U.S.C. §2241 and 18 U.S.C. §3582 requesting a reduction in his sentence because he is an alien, and subject to deportation. Petitioner argues that he is entitled to a reduction in his sentence because, due to his alien status, he is ineligible to participate in a residential drug treatment program or to receive a reduction in his sentence based upon successful completion of such a program. Additionally, petitioner complains

that he is ineligible to serve the last ten percent of his sentence in a halfway house and that he is housed in a more restrictive prison institution than that available to American prisoners "resulting in a severe disparity of sentence and a more severe condition of confinement." *Motion to Adjust Sentence,* Doc. No. 30, at 13.

On July 10, 2006, petitioner filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255, raising the following additional claims:

> 1. Guilty plea was not knowing, intelligent or voluntary due to misrepresentations of counsel.
>
> 2. Ineffective assistance of counsel due to counsel's failure to seek a downward departure based upon petitioner's mitigating role under U.S.S.G. §3B1.2.
>
> 3. Ineffective assistance of counsel due to counsel's failure to seek a downward departure for fast track program under U.S.S.G. §5K3.1.
>
> 4. Ineffective assistance of counsel due to counsel's failure to fight alienage and deportation.
>
> 5. A sentence reduction is warranted under *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

It is the position of the respondent that all of petitioner's claims without merit or not properly before this Court.

Challenges to the execution of a prisoner's sentence under 28 U.S.C. §2241 must be brought in the judicial district of the prison where the petitioner is housed. *Griffin v. Herrera,* 212 F.Supp.2d 707, 709 (E.D. Michigan 2002), citing *Charles v. Chandler*, 180 F.3d 753 (6th Cir. 1999); *Baldwin v. United States*, 412 F.Supp.2d 712, 715 (N.D. Ohio 2005), citing *United States v. Peterman,* 249 F.3d 458, 461 (6th Cir. 2001); *see also Hacker v. Federal Bureau of Prisons,* 450 F.Supp.2d 705,

3

709 (E.D. Michigan 2006)(challenge to Bureau of Prison regulations denying prisoner halfway house eligibility properly brought under §2241); *United States v. Recinos-Gallegos*, 151 F.Supp.2d 659 (D.Md. 2001)(equal protection challenge to alien's ineligibility for prison programs properly brought under §2241), citing *United States v. Acevedo,* 246 F.3d 682, 2001 WL 280485 (10th Cir.2001).

However, the United States District Court for the Southern District of Georgia, where petitioner is incarcerated, has concluded that claims like those raised herein are not properly brought under 28 U.S.C. §2241, but in a motion under 28 U.S.C. §2255 or 42 U.S.C. §1983. *Minh v. United States*, 2006 WL 2444085 S.D. Georgia, August 22, 2006):

> Petitioner... currently incarcerated at McRae Correctional Facility ("McRae") in McRae, Georgia, brought the captioned petition under 28 U.S.C. §2241. Petitioner, a deportable alien, argues that the Bureau of Prisons ("Bureau") has subjected him to more severe conditions of confinement than those faced by United States citizens by housing him at McRae, which according to Petitioner is a facility reserved for prisoners who are likely to be deported. Pet., p. 5. Petitioner states that, because of his status as a deportable alien, he is ineligible for a variety of prison programs, including work programs, educational opportunities, and drug abuse treatment programs, as well as transfer to a halfway house. *Id.* at 19-24. Petitioner also argues that his alienage prevents him from receiving consideration for early release. *Id.* at 23.
>
> \*\*\*
>
> According to Petitioner, these collateral consequences of his alienage were not taken into account at his sentencing, and he is entitled to a sentence reduction.
>
> Despite Petitioner's attempt to cast his petition as challenging the "execution" of his sentence, *see* Pet., p. 7, § 2241 is the wrong procedural vehicle for most-if not all-of his claims. Petitioner's chief argument is that, if the sentencing court had been aware of the collateral consequences of his alienage, it would have given him a shorter sentence. *Id.* at 5-7. As relief, Petitioner seeks a sentence

"adjustment." *Id.* at 8; *see also id.* at 28-30. In essence, Petitioner argues that he is entitled to be resentenced and granted a downward departure based upon his alien status. *See id.* at 25-26.

Simply put, Petitioner is challenging the fundamental validity of his sentence, not its execution. Such claims are properly brought in a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255.

\*\*\*

[T]o the extent Petitioner is contesting the conditions of his confinement, such claims are not properly brought under § 2241. The petition for habeas corpus is available to challenge the fact or duration of one's confinement, not the conditions of confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). Stated another way, "the sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." *Cook v. Hanberry,* 592 F.2d 248, 249 (5th Cir.1979) ( *per curiam* ).

Here, Petitioner disputes the Bureau's use of a detainer from the Bureau of Customs and Immigration Enforcement ("BICE") in determining his eligibility for prison programs or early release. *See* Pet., p. 22. Claims of this sort are normally brought in a civil rights action, not a petition for writ of habeas corpus. *See, e.g., Stevens v. Heard,* 674 F.3d 320, 323 (5th Cir.1982) (state prisoner's complaint challenging "the practice of considering any detainers in determining eligibility for prison programs" properly brought under 42 U.S.C. § 1983). That said, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. *See, e.g., United States v. Tamayo,* No. 04-2307, 162 Fed. Appx. 813, 815, 2006 WL 52792, at \*2 (10th Cir. Jan. 11, 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under §2241 without assessing whether claim was exhausted).

*Id.; Chau v. United States,* 2006 WL 2443351 (S.D. Ga. August 18, 2006)(same); *Pham v. Pugh*, 2006 WL 3091437 (S.D. Ga. October 27, 2006)(prisoner's claim that his sentence should be reduced because he is ineligible for drug treatment or halfway house due to alien status properly brought "in a civil rights complaint filed pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S.

5

388 (1971)).

Construing petitioner's allegation that he is entitled to a sentence reduction because he receives a more severe sentence due to his alien status as raising an equal protection claim, and assuming further that such issue is properly before the Court in these §2255 proceedings, the Magistrate Judge concludes that, for the reasons discussed by the District Court for the Southern District of Georgia, the claim is, in any event, without merit.

> [I]nmates do not have any federal constitutional right to participate in rehabilitative programs. [FN5] Nor does an inmate have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison. *See, e.g., McKune v. Lile* 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison); *but see Wilkinson v. Austin,* 545 U.S. 209, __, 125 S.Ct. 2384, 2395 (2005)(Ohio prisoners had state-created liberty interest in avoiding assignment to "supermax" prison under the Fourteenth Amendment).[FN6] In sum, Petitioner has not shown that his Fifth Amendment due process rights have been violated.
>
> FN5. *See, e.g., Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976) (Federal prisoners have no due process right to eligibility for rehabilitative programs.); *Murdoch v. Washington,* 193 F.3d 510, 513 (7th Cir.1999) (no protectible liberty or property interest in attending rehabilitation program); *Wishon v. Gammon,* 978 F.2d 446, 450 (8th Cir.1992)(no right to educational or vocational opportunities); *Canterino v. Wilson,* 869 F.2d 948, 952-54 (6th Cir.1989) (no liberty interest in inmate classification or eligibility for work programs); *Hernandez v. Johnston,* 833 F.2d 1316, 1318 (9th Cir.1987) (no right to particular inmate classification or eligibility for rehabilitative programs); *Pugliese v. Nelson,* 617 F.2d 916, 923 (2d Cir.1980) (same); *Battle v. Anderson,* 564 F.2d 388, 403 (10th Cir.1977) ("[A]n inmate does not have a federal constitutional right to rehabilitation."); *Lyle v. Sivley,* 805 F.Supp. 755, 759-60 (D.Ariz.1990) (holding that Due Process Clause does not give federal prisoners a protected right to participate in drug treatment programs).

FN6. The Supreme Court's recent decision in *Wilkinson* is not instructive in the instant case. In *Wilkinson,* the Supreme Court held that Ohio prisoners had a Fourteenth Amendment liberty interest in avoiding assignment to a special "supermax" prison-the only one of its kind in Ohio-in which inmates' lives were closely controlled and monitored, visitation was rare and occurred only through glass walls, and "inmates were deprived of almost any environmental or sensory stimuli and of almost all human contact." 545 U.S. at __, 125 S.Ct. at 2389. Placement in the prison lasted indefinitely, and prisoners otherwise eligible for parole lost their eligibility while incarcerated at the prison. *Id.* Petitioner has not shown that assignment to McRae poses an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" comparable to that considered by the Supreme Court in *Wilkinson. Id.* at 2394 (quoting *Sandin v. Conner,* 515 U.S. 474, 483-84 (1995)).

Furthermore, the Bureau's use of BICE detainers in deciding prisoners' eligibility for prison programs and early release does not offend equal protection principles. Of note, courts have routinely upheld the Bureau's consideration of BICE detainers in making classification decisions regarding inmates, including such issues as security level and eligibility for prison programs.[FN7] ... Petitioner's argument that aliens are categorically denied transfers to halfway houses is misleading.... [T]he Bureau excludes *all* inmates-not just aliens-who are subject to detainers from participation in community-based treatment programs. *McLean v. Crabtree,* 173 F.3d 1176, 1185 (9th Cir.1999). The "detainer exclusion," which is based upon the rationale that prisoners with detainers pose an increased flight risk, does not single out aliens and does not violate the Equal Protection Clause. *Id.*

FN7. *See, e.g., Franklin v. Berry,* 909 F.Supp. 21, 27-28 (D .D.C.1995)(upholding Bureau's reliance upon detainers in assigning security classifications to aliens); *Limas v. McNary,* 799 F.Supp. 1259, 1263 (D.Mass.1992)(Bureau's decision to deny deportable aliens prerelease transfer to minimum security institutions did not implicate any constitutional right); *Isaraphanich v. Coughlin,* 715 F.Supp. 119, 120-21 (S.D.N.Y.1989)(Bureau's reliance on detainers to deny aliens access to prison programs did not violate the Equal Protection Clause); *Fernandez-Collado v. I.N.S.,* 644 F.Supp. 741, 744 (D.Conn.1986)("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."), *aff'd* 857 F.2d 1461 (2d Cir1987).

... The Bureau does not deny aliens participation in substance abuse treatment programs; rather, the Bureau denies aliens subject to BICE detainers consideration for early release on account of their completion of a residential drug abuse treatment program. *See* 28 C.F.R. §550.58(a)(1)(i). Of note, the Bureau clearly possesses the power to categorically exclude inmates from consideration for early release. *See Lopez v. Davis,* 531 U.S. 230, 239-44 (2001) (upholding a Bureau regulation categorically excluding, based upon its general discretion under the statute to grant or deny early release, prisoners convicted of otherwise nonviolent offenses that involved use of a firearm). Furthermore, the Bureau may aim such an exclusion at deportable aliens if it has a rational basis for its decision. *See Mathews v. Diaz,* 426 U.S. 67, 77 (1976).

That said, Petitioner's ineligibility for sentence reduction is actually a consequence of the "detainer exclusion" explained above. The Bureau does not allow inmates who are ineligible for community-based treatment to receive consideration for early release-irrespective of whether they complete a substance abuse treatment program. 28 C.F.R. § 550.58(a)(1)(v). As noted above, all inmates with detainers-not just deportable aliens-fall into this category. The Bureau's decision to link consideration for early release with eligibility for community-based treatment is rational and has been upheld by every court to consider the issue. *See, e.g., Rublee v. Fleming,* 160 F.3d 213, 215-18 (5th Cir.1998).

Finally, Petitioner is quite correct that his deportability prevents him from participating in Federal Prison Industries ("UNICOR") work assignments. *See* 28 C.F.R. § 345.35(a). Nevertheless, the Bureau clearly has a rational basis for excluding deportable aliens from consideration for rehabilitative programs, including UNICOR assignments. As one court has explained:

The [Bureau] does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country and the policy of this society, and in not providing programs for deportable aliens who have no right to be in the country and whom Congress has an interest in deterring from entering or returning.... There is no equal protection violation in different treatment of aliens as to rehabilitation and other programs. The United States may treat deportable aliens and citizens differently. There is no

8

> primary interest in reformation of deportable persons. That's an interest of the country to which they may be deported. Deterring further illegal reentry is a legitimate interest of the United States as well as saving expenses. Also, special security may be justified to avoid flight to the border. In the case of American citizens, or lawful residents, reformative programs are a worthy correctional consideration.
>
> *Ruiz-Loera v. United States,* No. 00-CV-323-K, 2000 WL 33710839, at *2 (D. Utah June 23, 2000) (citations omitted); *see also Tamayo,* 162 Fed. Appx. at 816, 2006 WL 52792, at *3 ("[T]here is a rational basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement.").

*Chau v. United States, supra*, 2006 WL 2443351.

Further, petitioner's claim that he is entitled to have his sentenced reduced because of his status as an alien fails to raise an issue justifying federal habeas corpus relief. To obtain relief under §2255, a prisoner must establish that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n. 10 (1976).

> To prevail on a §2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Watson v. United States,* 165 F.3d 486, 488 (6th Cir.1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).
>
> To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a " 'fundamental defect which inherently

9

results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990)) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); *accord Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996).

*McNeil v. United States*, 72 F.Supp.2d 801, 803 (N.D. Ohio 1999). Petitioner cannot meet this burden here.

> [N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver. Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside of the normal appellate system. Hence, when a federal statute, but not the Constitution, is the basis for postconviction attack, collateral relief from a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process. *Reed*, 512 U.S. at ----, 114 S.Ct. at 2300.
>
> Accordingly, nonconstitutional errors ordinarily are not cognizable on collateral review. Defendants must assert their claims in the ordinary course of trial and direct appeal. If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under §2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what really is being asserted is a violation of due process. Thus, as a practical matter, collateral relief does exist to vindicate rights of constitutional import that may lurk beneath otherwise garden-variety issues of statutory rights or guideline calculations.

*Grant v. United States, supra,* 72 F.3d at 506. Further, petitioner's sentence of sixty months is the mandatory minimum term of incarceration required for his offense of conviction under 21 U.S.C.

10

§841(b)(1)(B)(i). Therefore, petitioner's claim that he was denied the effective assistance of counsel due to his attorney's failure to request a downward departure of petitioner's recommended sentence under U.S.S.G. 3B1.2,[1] or 5K3.1[2] likewise fails. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Petitioner's claim that his guilty plea was not knowing, intelligent, or voluntary due to the ineffective assistance of counsel also is without merit. Because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among

---

[1] U.S.S.G. 3B1.2 provides:

Mitigating Role

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

[2] U.S.S.G. 5K3.1 provides:

Early Disposition Programs (Policy Statement)

Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

the alternative courses of action open to the defendant.'" *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir. 1988)(quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, the court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). The two part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

Petitioner signed a plea agreement indicating that he understood that he was pleading guilty to an offense that carried a mandatory minimum sentence of five years in prison. *See* Doc. No. 20. Petitioner was thoroughly advised of all of the rights that he was waiving by virtue of his guilty plea, and of the nature of the offense to which he was pleading guilty. *Transcript*, April 15, 2005, 16-20.

Petitioner explicitly was advised that his conviction may result in his deportation from the United States, if he was not a citizen of the United States. *Id*., at 11. Thus, petitioner cannot establish prejudice from any failure of counsel to discuss the issue of deportation with petitioner, *see Kazymyriw v. United States*, 2005 WL 1802136 (N.D. Ohio July 28, 2005)(defendant cannot show prejudice or that he would not have pleaded guilty where the court advised him of the possibility of deportation), citing *Hill, supra*, 474 U.S. at 59, and counsel was not required to "fight against" petitioner's possible deportation in criminal proceedings. Additionally, the Court explicitly advised petitioner that he would be sentenced to a mandatory minimum term of five years. Petitioner indicated that he understood, and stated that he was satisfied with his attorney:

> COURT: Have you discussed this matter with your attorney?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Do you believe that your attorney is fully informed about the facts and circumstances on which this specific charge is based?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Has your attorney fully advised you on the nature and meaning of the charge and any defenses that you might have?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Are you satisfied with your attorney's advice and representation in this case?
>
> DEFENDANT: Yes, Your Honor.

*Transcript*, April 15, 2005, at 5-6.

>COURT: [T]here is a mandatory minimum penalty of 5 years in prison; do you understand that?
>
>DEFENDANT: Yes, Your Honor.
>
>COURT: Do you understand what "mandatory" means?
>
>DEFENDANT: Yes, Your Honor.
>
>COURT: Mandatory means that I have no choice, you will be sentenced to a minimum sentence of 5 years in prison; do you understand that?
>
>DEFENDANT: Yes, Your Honor.

*Id.*, at 7. Petitioner denied that anyone had promised him or suggested to him that he might receive a lighter sentence by pleading guilty. *Id.*, at 20. He admitted his guilt and stated that he was pleading guilty because it was his desire to do so. *Id.*, at 28-29.

Pursuant to the terms of his guilty plea, counts one and two of the superseding indictment, which charged petitioner with possession with intent to distribute 2.5 grams of heroin, and possession with intent to distribute .2 grams of cocaine, in violation of 21 U.S.C. §841(a)(1), (b)(1)(C), and 18 U.S.C. §2 were dismissed, thereby substantially reducing petitioner's prison exposure. The government agreed not to file any additional criminal charges against petitioner based on his activities in the superseding indictment or related to the distribution of controlled substances prior to the date of the superseding indictment. *Plea Agreement,* at 2. Petitioner received a two point reduction in his recommended sentence under the United States Sentencing Guidelines for his acceptance of responsibility, *PreSentence Investigation Report*, at ¶42, and a one point reduction for timely

notifying authorities of his intention to enter a guilty plea. *Id*., at ¶43. Petitioner obtained the minimum possible sentence possible for his offense of conviction. *Id*., at ¶¶89, 93. Further, the record does not reflect that the government would have been unable to establish the charges against petitioner. Detective Kididis summarized the facts of the case as follows:

> This investigation began in late 2002, early 2003, after investigators encountered several different individuals trafficking in heroin in the Columbus, Ohio area, as well as an increase in the use of heroin of individuals in communities in and around the Columbus, Ohio area.
>
> Investigating agents from the Columbus, Ohio Division of Police, Fairfield County Major Crimes Unit, Drug Enforcement Administration and the Internal Revenue Service began sharing information and soon came to realize that many of these incidents were related to the same group of people.
>
> One of the individuals identified as a significant distributor of heroin at that time was a man by the name of Dayrel Billingsley. Investigating agents began conducting surveillance of Billingsley and his associates. They also attempted to make undercover purchases of heroin from individuals believed to be selling heroin supplied by Billingsley.
>
> In February of 2002, investigators learned that Avila had been arrested in possession of 22 packages of heroin (5.4 grams), marijuana (0.8 grams) and $2198 in cash. At the time of his arrest, Avila was also in possession of a Mail Boxes, Etc. Card at 6956 East Broad Street. He used that address for his driver's license and vehicle registrations. Billingsley also used that same address of 6956 East Broad Street for businesses he had incorporated and to obtain cellular telephone numbers. Further investigation revealed Avila had received a traffic ticket in the past driving a vehicle registered to Dayrel Billingsley.
>
> On May 18th, 2004, Avila was again arrested following another traffic stop. At that time, he was in possession of 2.5 grams of heroin and 0.2 grams of cocaine.
>
> During the summer of 2004, investigators intercepted a number of

> telephone conversations through court-ordered wiretaps on the telephones of Dayrel Billingsley, Kevin Grant and Kevin Neal. Beginning in August of 2004, a number of individuals – both distributors and users – were arrested and/or interviewed. A number of these individuals agreed to cooperate and testify about their own involvement and the involvement of others in heroin trafficking. Several of these cooperating witnesses identified the defendant, Kelvis Avila, as an individual selling heroin in the Columbus, Ohio area for the past several years.
>
> Cooperating witnesses identified Avila as one of the individuals that Dayrel Billingsley recruited in New York in 2002/2003 to come to Columbus and sell heroin fronted by Billingsley. Avila worked with other individuals such as Allen Robinson, Kevin Neal, Kareem Wheeler and Keith Pounds, aka Pills, to sell heroin supplied by Billingsley.
>
> Sometime in 2003, cooperators indicate Kevin Neal stopped dealing with Billingsley and obtained his own source of supply. Avila became one of Neal's customers, obtaining at least 10 to 20 grams of heroin at a time for resale.
>
> In conclusion, the evidence developed through wiretaps, surveillance, undercover purchases, traffic stops, search warrants, financial investigation and information provided by cooperating witnesses establishes that Kelvis Avila conspired with other individuals from February of 2002 through May of 2004 to distribute and to possess with intent to distribute more than 100 grams of heroin.

*Id.*, at 23-24. Under these circumstances, it is unlikely that defense counsel would have advised petitioner against accepting the guilty plea.

Petitioner fails to provide any specificity regarding the alleged misrepresentations of counsel that induced his guilty plea; however, inaccurate predictions by counsel do not render a guilty plea invalid or constitute ineffective assistance where the Court has accurately advised petitioner of sentencing ramifications and of all of the rights that he is waiving by virtue of his guilty plea, as were

16

the circumstances in this case.

> It has long been settled as a general rule that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel. *See Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir.1972) (citing *Wellnitz v. Page*, 420 F.2d 935 (10th Cir.1970)); *see also United States v. Marzgliano*, 588 F.2d 395, 399 n. 6 (3d Cir.1978) (explaining different rule where allegation is that plea was based on misconduct or misrepresentation by defense counsel); *United States v. Valenciano*, 495 F.2d 585, 588 (3d Cir.1974) (same). This rule has been reinforced with the advent of Guideline sentencing and the detailed procedures to be followed in conducting the Rule 11 colloquy at the guilty plea hearing. *See, e.g., United States v. Stephens*, 906 F.2d 251, 253 (6th Cir.1990) ("The mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement.... This is especially true under the new Sentencing Guidelines.") (quoting *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989) ("[The Sentencing Guidelines] reinforce our earlier decisions on the issue. Under the Guidelines there will be many more detailed hearings regarding imposition of sentence.")).

> The rationale is that the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel. *See, e.g., United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir.1999) ("[A]n attorney's mere inaccurate prediction of sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.") (citation omitted); *Gonzalez v. United States*, 33 F.3d 1047, 1051-53 (9th Cir.1994) ( "The district court informed [defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel]'s representation of him. As a result, [he] cannot claim he was prejudiced by [counsel]'s alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990) ("[Defendant]'s attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely

17

> outcome of his case, and thus does not constitute ineffective assistance of counsel.... Further, [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court.") (citation omitted).

*Brown v. United States*, 75 F.Supp.2d 345, 355 (D. New Jersey, 1999).

Finally, and contrary to petitioner's allegations here, the record does not reflect that petitioner was sentenced in violation of *Blakely* or *Booker*. As discussed, petitioner was sentenced to the minimum mandatory term of incarceration required for his offense of conviction. The United States Sentencing Guidelines were given advisory, but not mandatory consideration in this case. *See PreSentence Investigation Report*, at ¶10.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation*

*de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                            s/Mark R. Abel
                                                            United States Magistrate Judge